UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS NICKOWSKI,

    Plaintiff                                    Civil Action No. 16-11814

v.

                                          MARIANNE O. BATTANI,
                                          U.S. District Judge
                                          R. STEVEN WHALEN,
                                          U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# REPORT AND RECOMMENDATION

Plaintiff Thomas Nickowski ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging Defendant Commissioner's ("Defendant's") denial of Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

# I. PROCEDURAL HISTORY

On October 1, 2013, Plaintiff filed an application for SSI, alleging disability as of February 23, 2013 (Tr. 239). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 17, 2015 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy Christensen (Tr. 36). Plaintiff, represented by attorney Justin Drilich, testified, as did vocational expert ("VE") Michael Roscoe (Tr. 41-57, 57-60). On July 9, 2015, ALJ Christensen found that Plaintiff was not disabled (Tr. 18-31). On April 14, 2016, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision in this Court on May 21, 2016.

# II. BACKGROUND FACTS

Plaintiff, born February 25, 1958, was 57 when the ALJ issued his decision (Tr. 31, 239). He completed one year of college and worked previously as a caretaker and plumber (Tr. 268). He alleges disability due to depression, diabetes, and neck and back problems (Tr. 267).

### A.     Plaintiff's Testimony (April 17, 2015)

*Plaintiff's counsel prefaced his client's testimony by noting diagnoses of bipolar disorder, major depressive disorder, anxiety, insulin dependent diabetes, peripheral neuropathy, hepatitis C, and stenosis of the cervical spine* (Tr. 40).

Plaintiff then offered the following testimony:

He was currently looking for work as a plumber or maintenance worker (Tr. 41). In 2014, he worked for several months as a janitor, but was terminated due to fatigue and problems standing (Tr. 41). A former heroin addict, Plaintiff reported that he felt better when not taking heroin, adding that he had relapsed for a couple of days in August, 2014 but was now clean (Tr. 42).

In response to questioning by his attorney, Plaintiff reported that he stood 6' and weighed 175 pounds (Tr. 42). He noted that he had recently lost weight due to his inability to afford food and that as a result of a felony record, he was ineligible for food stamps (Tr. 43). He held a expired Texas plumbing license but no Michigan license (Tr. 43).

Plaintiff reported that he took medicine for various conditions as prescribed (Tr. 44). He currently took antidepressants, cholesterol medication, Klonopin, MS Contin, and insulin and Metformin for diabetes (Tr. 44). Pain medication kept his level of lower back pain at a "three" on a "one to ten" scale (Tr. 44). He also experienced "pins and needles" neuropathy of the feet which prevented him from being on his feet for more than 20 minutes at a time (Tr. 45). His ability to stand and walk was also compromised by fatigue (Tr. 45). He experienced interrupted sleep due to both psychological and physical issues and required daily naps (Tr. 46). He experienced anxiety for up to 30 minutes each morning, characterized by "overwhelming" anxiety at the thought of planning the day's activities (Tr. 47). The condition of depression was characterized by low motivation, lack of energy, and restlessness (Tr. 47). He denied significant medication side effects (Tr. 48). He did not experience

physical problems getting dressed (Tr. 48). However, he often lacked the motivation to get dressed or clean his house (Tr. 48-49).

Plaintiff did not experience physical problems sitting but was unable to walk more than one-half a block due to fatigue (Tr. 50). He attended meetings for former substance abusers around 10 times a week (Tr. 50-51). He got along well with others but sometimes felt intimidated by persons of authority (Tr. 51). He was unable to bend without pain and was restricted to lifting no more than 20 pounds by his physician (Tr. 51-52). Aside from the above-mentioned conditions, Plaintiff experienced Chronic Obstructive Pulmonary Disorder ("COPD"), which caused shortness of breath while talking and upon exertion (Tr. 52). He smoked cigarettes at night when he was unable to sleep (Tr. 53). His glucose level was currently good, but he had been hospitalized four times in the past year for glucose levels exceeding 700 (Tr. 54). He applied for work in machine shops, retail work, and desk work and was currently looking for work through an employment agency (Tr. 54-55).

### B.     Medical Evidence

#### 1.  Treating Sources

An October, 2012 psychiatric medication review by Pravin Soni, M.D. states that Plaintiff was non-compliant with psychotropic medications (Tr. 565). Dr. Soni noted that Plaintiff denied hallucinations but reported "very mild" depression (Tr. 569, 571). In December, 2012, Plaintiff sought emergency treatment for acute hyperglycemia (Tr. 508). Imaging studies were negative for acute pulmonary disease (Tr. 505). February, 2013

emergency records note that Plaintiff admitted to daily heroin use (Tr. 465, 472-473, 511). He was treated for wrist abscesses (Tr. 424, 427, 468, 475). Treating records also note a diagnosis of Hepatitis C (Tr. 471). Imaging studies were negative for deep vein thrombosis ("DVT") (Tr. 493). An echocardiogram was unremarkable (Tr. 429). A CT of the cervical spine showed stenosis at multiple levels but no other abnormalities (Tr. 490). Plaintiff demonstrated full grip strength on the right, limited grip strength on the left, and a normal memory (Tr. 422). In April, 2013, right forearm masses resulting from frequent heroin injections were incised and drained (Tr. 388). Plaintiff admitted to smoking a half-pack a day and "some" alcohol use (Tr. 384). The same month, mental health services noted that Plaintiff reported a positive attitude and the ability to communicate with others and "take care of business when needed" (Tr. 611, 667). He reported that he wanted to do volunteer work, get a job, and "find a companion" (Tr. 611).

A psychiatric medication review from the following month by Dr. Soni noted that Plaintiff was alert and cooperative with "no overt psychosis/mania" (Tr. 589). Dr. Soni opined that medication compliance was "the problem" (Tr. 589). Plaintiff reported "very mild" depression with a "questionable inability to form friendships" and low motivation (Tr. 594-595, 598). June, 2013 records state that Plaintiff currently worked "under the table as a plumber" (Tr. 881). In July, 2013, Plaintiff was admitted for psychiatric inpatient and for medical treatment after exhibiting signs of psychosis and left forearm swelling and pain (Tr. 360, 362, 940, 944, 963). He was diagnosed with left hand cellulitis (Tr. 357-359). He

denied suicidal or homicidal ideation (Tr. 362). Liver function tests were normal (Tr. 366).

The following month, Plaintiff entered a detox program (Tr. 519-564). Discharge records created three weeks later state that he was prescribed continued outpatient treatment (Tr. 527). In September, 2013, Dr. Soni acknowledged treatment records from the previous month but noted that Plaintiff was currently "alert cooperative calm with neat and clean appearance without overt psychosis/mania/depression" (Tr. 599). Plaintiff denied depression but reported "very mild" anxiety (Tr. 604-605). Counseling notes from later the same month state that Plaintiff applied for Social Security benefits at the urging of his counselor (Tr. 762). Medical treatment notes from the following month, note Plaintiff's report of substance abuse, semi-daily panic attacks, depression, and diabetes (Tr. 626, 808). Plaintiff reported that he recently lost his job (Tr. 628). A November, 2013 medication review by Dr. Soni states that Plaintiff was upset about his recent job termination but again appeared "alert, cooperative [and] calm" with a neat appearance (Tr. 640, 645, 754). Plaintiff reported very mild depression but denied anxiety or problems forming relationships (Tr. 645-646). The following month, he listed his physical health concerns as diabetes, hepatitis C, hypertension, and dyslipidemia (Tr. 692). He reported blood sugar levels of over 600 (Tr. 737, 934). Counseling records state that he was making plans to attend a dance (Tr. 735).

February, 2014 counseling records state that Plaintiff was compliant with diabetes medication following an emergency room treatment for elevated glucose levels resulting from his inability to buy insulin or needles (Tr. 726, 1005-1006). April, 2014 counseling

records state that Plaintiff was making friends at NA meetings (Tr. 720). The same month, he applied for janitorial positions (Tr. 865-866). Medical records from the same month note diabetic peripheral neuropathy of the feet (Tr. 771). May, 2014 counseling records state that Plaintiff identified his strengths as intelligence, an outgoing personality, love of dogs, and gardening (Tr. 650). He reported that he attended a prayer group, went to church, and attended AA meetings, but experienced low motivation (Tr. 650, 665). Medical records from the same month note his report of "pins/needles" pain of the hands and feet (Tr. 765). Case notes from the following month state that Plaintiff "may need job coaching to assist with speed in performing tasks and dealing with frustration" (Tr. 836, 862). Plaintiff reported significant pins and needles foot pain at the end of the day (Tr. 839). July, 2014 records state that Plaintiff had not taken antidepressive medication since February and was currently depressed (Tr. 682). He denied heroin use for the past year (Tr. 682). He reported that he currently experienced "chronic back pain"[1] (Tr. 685). A job assessment stated that he should consider jobs as a custodian, stocker, bagger, shipper/receiver, packager, or assembler (Tr. 877-878). August, 2014 records state that Plaintiff briefly relapsed on heroin and crack (Tr. 714). Case notes from the same month state that Plaintiff had been cleared for "work with no restrictions" (Tr. 840).

---

[1] July, 2014 medical records do not mention the condition of back pain (Tr. 776).

September, 2014 chest x-rays were unremarkable (Tr. 789, 811). Imaging studies showed no evidence of acute cardiopulmonary disease (Tr. 832). Nerve conduction studies of the lower extremities showed bilateral peripheral neuropathy resulting from diabetes (Tr. 821). Blood tests showed a glucose level of 120 (Tr. 826). October, 2014 records state that Plaintiff was directed to a food pantry after he was denied food stamps due to an August, 1996 drug-related conviction (Tr. 707). Plaintiff reported that he recently rode his bike for 20 miles in an attempt to procure medication (Tr. 707). In November, 2014, he reported to a case manager that he had "no problem" with his current janitorial position (Tr. 842). However, later the same month, he reported that he lost his job due to tardiness and leaving work early on multiple occasions (Tr. 702, 842). He agreed to consider other janitorial or maintenance positions (Tr. 843). He reported that he was searching and applying for jobs online and was looking into acquiring a Michigan plumber's license (Tr. 703-704). December, 2014 records state that Plaintiff was sentenced to community service after his moped collided with another vehicle (Tr. 698, 701).

January, 2015 emergency room records state that Plaintiff was non-compliant with diabetes medication (Tr. 924). February, 2015 counseling records state that a conditional offer of employment was withdrawn after a background check showed a criminal record (Tr. 697). The same month, Plaintiff sought emergency treatment after injuring his back shoveling snow (Tr. 973, 976). An x-ray showed only degenerative changes (Tr. 980). An MRI showed "mild probably benign acute to subacute L1 compression fracture" with mild

bilateral neural foramina encroachment (Tr. 981). March, 2015 emergency room records state that Plaintiff sought treatment for a fractured sternum and herniated disc (Tr. 900, 911). Plaintiff also sought treatment for blurred vision after failing to take insulin regularly (Tr. 995). April, 2015 case notes state that Plaintiff received medical clearance for work several weeks after the back injury (Tr. 845-846, 895).

### 2. Non-Examining Sources

In January, 2014, Dyan Hampton-Aytch,Ph.D. performed a non-examining review of Plaintiff's psychiatric records, finding that he experienced mild limitation in activities of daily living and social functioning, and moderate limitation in concentration, persistence, or pace (Tr. 181). The same month, Muhammad Ahmed, M.D. performed a non-examining review of the records pertaining to Plaintiff's physical conditions, finding the absence of any exertional or non-exertional limitation (Tr. 182).

### C. Vocational Expert Testimony

After finding that Plaintiff had no "past relevant work" for the past 15 years, ALJ described a hypothetical individual of Plaintiff's age and education:

> This individual does not have any exertional limitations; should not be required to perform extreme extension or rotation of the neck, should avoid concentrated exposure to respiratory irritants, no work around hazards. The work should be simple routine type tasks. By that I mean the individual's capable of understanding, remembering, and executing on a sustained basis one, two, three step type tasks; should be only occasional changes in the work setting. Would there be work that that individual could do? (Tr. 57-58).

The VE testified that the above-described hypothetical individual could perform work of an assembler (25,000 positions in the State of Michigan); packager (8,000); and inspector (3,000) (Tr. 58). The VE stated that if the same individual were off task more than 20 percent of the workday due to "pain, fatigue, depression, [and] shortness of breath;" or, required to miss work more than twice a month, all competitive work would be eliminated (Tr. 58).

In response to questioning by Plaintiff's attorney, the VE testified that the need to be off task for 10 percent or more of the work period would preclude all gainful employment (Tr. 59). The VE stated that if the same individual required a sit/stand option with the need to change positions every 15 minutes, the above job numbers would be reduced to a total of "no more than 1,000 statewide" (Tr. 60).

### D. The ALJ's Decision

Citing the medical transcript, ALJ Christensen found that from the application date of September 27, 2013 to the July 9, 2015 decision, Plaintiff experienced the severe impairments of "major depressive disorder; history of polysubstance abuse; insulin-dependent diabetes mellitus; diabetic neuropathy; bipolar I disorder; antisocial personality disorder; degenerative disc disease in the lumbar spine with compression fracture at Ll; and chronic obstructive pulmonary disease" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 21). The ALJ found that despite a finding of non-disability on February 22, 2013 by a different ALJ, he

was not bound by the findings due to a "new and material" change in Plaintiff's condition (Tr. 18)(*citing Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Rulings 98-3(6), 98-4(6)).

The ALJ found that during the same period, Plaintiff retained the Residual Functional Capacity ("RFC") for work at all exertional levels with the following additional limitations:

> [H]e should not perform extreme extension or rotation of his neck He should avoid concentrated exposure to respiratory irritants. He should not work around hazards. Furthermore, the claimant is limited to performance of simple, routine tasks. In other words, he can understand, remember, and execute one, two or three-step tasks on a sustained basis. Lastly, he should be in a work environment where there are only occasional changes in the work setting (Tr. 24).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the work of an assembler, packager, and inspector (Tr. 30-31 *citing* Tr. 58).

The ALJ discounted Plaintiff's allegations of disability. He noted that psychiatric records for the relevant period showed a calm demeanor with the absence of psychosis, mania, or depression (Tr. 25). The ALJ observed that Plaintiff was discharged from his job in November, 2013 for stealing (Tr. 25). He cited a job-related assessment performed in 2014 showing "acceptable core work behavior" despite some degree of limitation interacting with others (Tr. 26). The ALJ noted that subsequent to a brief August, 2014 heroin relapse, Plaintiff denied depression and was looking online for full-time work (Tr. 26).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  The Residual Functional Capacity Assessment

Plaintiff argues first that the RFC for a full range of work at all exertional levels does not account for the severe impairments of diabetic neuropathy and degenerative disc disease as found at Step Two of the administrative sequence. *Plaintiff's Brief,* 12-14, *Docket #17,* Pg ID 1084. He also contends, in effect, that the ALJ glossed over the psychological limitations resulting from long-term drug use. *Id.*

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

As to both the physical and psychological limitations, the ALJ's finding that Plaintiff was capable of work at all exertional levels is well supported and explained. The ALJ discussed the allegations of physical limitation at length, but noted that the treating records did not support Plaintiff's claims (Tr. 28-29). The ALJ noted a diagnosis of COPD, "likely from a long history of smoking cigarettes," that the chest x-rays were "consistently negative" and that Plaintiff had decreased breath sounds on only a few occasions (Tr. 27). He observed that "there is no indication that he had any difficulty engaging in work or volunteer activities" (Tr. 29). The ALJ noted that by Plaintiff's "own admission," he could "take public transportation, bike twenty miles, attend AA and church group meetings multiple times per week, and perform household chores including shoveling snow, cleaning, laundry, and lifting garage doors" (Tr. 29). He noted that the record showed that Plaintiff experienced difficulty obtaining employment not as a result

of his physical condition, but because of a criminal record (Tr. 29).

Substantial evidence also supports the finding that "simple routine work" limited to one to three-step tasks sufficiently accounts for the psychological limitations (Tr. 24). While the earlier records show that Plaintiff's condition was compromised by ongoing heroin use, the records from the October 1, 2013 support a finding of no more than mild or moderate psychological limitation. The treating records as a whole support support the RFC. Dr. Soni noted repeatedly that Plaintiff appeared alert, calm, and well groomed (Tr. 599, 640). Plaintiff denied depression and reported only mild anxiety (Tr. 599). A July, 2014 job assessment found that he was capable of jobs as a custodian, stocker, bagger, shipper/receiver, packager, or assembler (Tr. 877-878). Although Plaintiff used heroin regularly until August, 2013, he reported as of June, 2013 that he worked "under the table" as a plumber (Tr. 881). His ability to perform skilled work as a plumber undermines his claim that he lacks that psychological capacity to perform unskilled work as stated in the RFC.

My own review of the record mirrors the ALJ's findings. While Plaintiff testified that his physician had limited him to lifting 20 pounds or less, his claim of either short or long-term exertional limitations is unsupported by a medical opinion (Tr. 51-52). The record does not show complaints of significant back problems before Plaintiff injured his back shoveling snow in February, 2015 (Tr. 973, 976). The record shows that Plaintiff was medically cleared for employment by April, 2015 (Tr. 845-846, 895). One month after

nerve conduction studies showed lower extremity neuropathy, Plaintiff was able to take a 20-mile bike ride[2] (Tr. 707, 821). The records also show that Plaintiff was able to work for significant periods without physical limitations (Tr. 842). The record supports the finding that Plaintiff's criminal record, rather than psychological limitations, prevented him from finding work. Because the finding that he was capable of unskilled work at all exertional levels is well supported by substantial evidence, a remand on this basis is not warranted. Plaintiff's contention that the ALJ erred by declining to accept the allegations of greater physical and psychological limitation in the RFC is likewise unavailing. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC).

### B. Listing 1.04

Plaintiff also argues that his 2015 "vertebral fracture and low back problems" meet Listing 1.04 (Disorders of the Spine). *Plaintiff's Brief* at 14-15. He contends that the ALJ erred by declining to find him disabled at Step Three of the sequential analysis. *Id.*

At Step Three of the administrative sequence, "[a] Claimant who meets the

---

[2] Even assuming that symptoms of peripheral neuropathy required greater physical restrictions, the VE testified that a sit/stand option for position changes every 15 minutes would allow for a substantial number of jobs in the regional economy (approximately 1,000) (Tr. 60). *Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 375, 2006 WL 509393, *5 (6th Cir. March 1, 2006) (870 jobs in the claimant's geographic region a significant number).

requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits." *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).

Plaintiff recites the threshold requirement for meeting Listing 1.04, which requires evidence of a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. However, for a finding of disability at Step Three, the claimant must also show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Plaintiff fails to provide support for the finding that he meets any of the three subsections. As to A., none of the evidence suggest that his short-lived limitations following the vertebra fracture caused range of motion limitations, muscle atrophy, reflex loss, or any other signs listed under the same subsection, much less that he experienced such limitations for 12 months or longer as required by 42 U.S.C. §423(d)(1)(A). The record does not contain any evidence that he experienced spinal arachnoiditis as required to meet Listing 1.04B. Likewise, he cannot show the "inability to ambulate effectively" under subsection C. "Ineffective ambulation," as defined by the listings, requires evidence of "insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." § 1.00(B)(2). None of the evidence shows that Plaintiff requires any ambulatory aid, much less a device that requires the use of both hands. As such, his claim that he meets Listing 1.04 should be rejected.

My recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's efforts to overcome his past problems and his commendable ongoing quest for work. Nonetheless, the ALJ's determination that Plaintiff was capable of a significant range of unskilled work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen*

*v. Bowen*, *supra*.

## **CONCLUSION**

*For these reasons, I recommend that Defendant's Motion for Summary Judgment* [Docket #23] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #17] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 29, 2017                s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

---

CERTIFICATE OF SERVICE

I hereby certify on June 29, 2017 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants June 29, 2017.

                                    s/Carolyn M. Ciesla
                                    Case Manager for the
                                    Honorable R. Steven Whalen